1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

9   TONY ASBERRY,                           Case No. 1:16-cv-01741-LJO-JDP

10         Plaintiff,                        FINDINGS AND RECOMMENDATIONS
                                             TO (1) GRANT PLAINTIFF'S MOTION
11         v.                                FOR LEAVE TO AMEND COMPLAINT;
                                             (2) ALLOW PLAINTIFF TO PROCEED ON
12   C. RELEVANTE, R. LOZOVOY,               ONLY COGNIZABLE CLAIMS; (3) DENY
     A. FERRIS, and P. GODFREY,              PLAINTIFF'S MOTIONS FOR SUMMARY
13                                           JUDGMENT
           Defendants.
14                                           (Doc. Nos. 89, 90, 116, 117, 125.)

15

16         Plaintiff Tony Asberry, a state prisoner, proceeds without counsel in this civil rights

17   action brought under 42 U.S.C. § 1983.  Plaintiff moves for leave to amend his complaint and

18   for summary judgment on all his claims.  (Doc. Nos. 89, 90, 116, 117, 125.)  The undersigned

19   recommends that the court grant plaintiff's motion for leave to amend, allow plaintiff to

20   proceed only on cognizable claims, dismiss all other claims, and deny his motions for summary

21   judgment.

22   **I.    Plaintiff's motion for leave to amend**

23         Plaintiff moves for leave to amend his complaint.  (Doc. No. 89.)  Plaintiff's proposed

24   second amended complaint[1] contains additional factual allegations in support of the claims that

25   the court has found cognizable.  The second amended complaint also purports to assert

26   _____

27   [1] The court will adopt plaintiff's identification of his complaint as the second amended
     complaint, although there is no first amended complaint.  The court denied plaintiff's previous
28   motion for leave to amend.

additional claims.  Defendants Godfrey and Ferris oppose plaintiff's motion for leave to amend, arguing that the proposed amendment adds no cognizable claim (*see* Doc. No. 95); defendants Relevante and Lozovoy do not oppose plaintiff's motion.  Federal Rule of Civil Procedure 15 does not require an amendment to add a cognizable claim to a pleading, and a litigant may amend a pleading to add new factual allegations to support the claims already asserted.  The undersigned will therefore recommend that the court grant plaintiff's motion for leave to amend the complaint.[2]

Rule 15(a)(2) provides that a district court should grant leave to amend pleadings "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2); *accord United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 804 (9th Cir. 2017).  The court may deny leave to amend when the proposed amendment "would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."  *Gila Valley Irrigation Dist.*, 859 F.3d 789, 804 (9th Cir. 2017).  Defendants Godfrey and Ferris do not argue that plaintiff seeks to amend in bad faith or that the amendment causes undue delay; they argue only that the amendment is futile because the amended portion of the complaint would not withstand a motion to dismiss for failure to state a claim.  (*See* Doc. No. 95, at 4-5.)  Adding a new claim, however, is not the only purpose for amending a pleading.

"'A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.'"  *Earth Island Inst. v. Elliott*, __ F. Supp. 3d __, No. 17-cv-1320, 2018 WL 3372759, at *6 n.7 (E.D. Cal. July 9, 2018) (quoting Fed. R. Civ. P. 15(b)).[3]  Indeed, a party must timely amend his pleading to avoid

---

[2] Plaintiff's motion only vaguely implies that one of the purposes of the amendment is to add new facts to his pleading.  (*See* Doc. No. 89, at 3.)  However, "The substance of the motion, not its form, controls its disposition."  *See Andersen v. United States*, 298 F.3d 804, 807 (9th Cir. 2002).

[3] The quoted language on amending a pleading to raise an unpleaded issue appears under Rule 15(b), which governs amendments during and after trial, not Rule 15(a), which governs amendments before trial.  This court, however, has allowed amending a pleading to raise an unpleaded issue under Rule 15(a).  *See Earth Island Inst.*, 2018 WL 3372759, at *6 & n.9.

surprises for an opponent later in the proceeding.  *See, e.g.*, *Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).  This court has recently allowed an amendment to add new factual allegations in support of existing claims, even though the amendment did not assert a new claim.  *See Earth Island Inst.*, 2018 WL 3372759, at *8.

Here, plaintiff's proposed amendment adds new facts relevant to the claims that the court has already found cognizable.  In particular, plaintiff alleges in the amended complaint that he saw multiple medical professionals for his back injury.  (*See* Doc. No. 90, ¶¶ 11-14.) Likewise, plaintiff alleges that Ferris and Godfrey strip-searched him before they transported him to a new prison.  (*Id*. ¶ 44.)  He further alleges that, when asked whether he could stand, he told Ferris and Godfrey, "I[']m unable to stand[.]  I simply collapse."  (*Id*.)  Plaintiff's proposed amendment notifies defendants of these new facts, and therefore the court should allow plaintiff to amend his complaint.

## II.    Screening

Plaintiff's second amended complaint requires screening because plaintiff, a prisoner, seeks relief against government employees.  *See* 28 U.S.C. § 1915A(a).  The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard does not require detailed allegations, but legal conclusions do not suffice.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim.  *Id*. at 679.  The complaint need not identify "a precise legal theory."  *Kobold v. Good Samaritan Reg'l Med. Ctr*., 832 F.3d 1024, 1038 (9th Cir. 2016) (citation omitted).  Rather, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).  The court must construe a

1  pro se litigant's complaint generously.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972)

2  (per curiam).

3  **a.  Plaintiff's allegations**

4  Plaintiff was incarcerated at Kern Valley State Prison ("KVSP").  Defendant Lozovoy

5  was a nurse practitioner at KVSP, where defendant Relevante was a physician's assistant.

6  Defendants Ferris and Godfrey were correctional officers there.

7  **i.  Wheelchair accommodations**

8  The California Department of Corrections and Rehabilitation recognizes at least five

9  levels of mobility impairment.  For an inmate with the lowest level of mobility impairment,

10  prison officials may authorize the use an "assistive device"; for an inmate with the highest

11  level of mobility impairment, prison officials may authorize the full-time use of a wheelchair

12  and place the inmate in a wheelchair-accessible housing unit.  Prison officials may also

13  authorize additional accommodations, such as a transport vehicle with a lift, a mobility vest,

14  and housing on the ground floor where the inmate need not climb stairs.  Plaintiff refers to all

15  these accommodations as wheelchair accommodations, a term the undersigned will adopt.

16  Plaintiff alleges that Relevante and Lozovoy unlawfully took away his wheelchair

17  accommodations during his confinement at KVSP.  In April 2015, before plaintiff arrived at

18  KVSP, Kim, a physician at another prison, examined plaintiff for his back injury.  Kim placed

19  plaintiff in the Disability Placement Program,[4] noted that plaintiff had a verified disability, and

20  completed a form authorizing various accommodations, including a wheelchair for plaintiff

21  and wheelchair-accessible housing.  In May 2015, Kim sent plaintiff to see a neurologist, who

22  in turn recommended two diagnostic tests, a nerve conduction study ("NCS") and an

23  electromyography ("EMG").  In June 2015, Birdsong, another physician, ordered a second

24  NCS and EMG.  In August 2015, Rice, yet another physician, reported his findings from those

25  diagnostic tests and noted "evidence of a sensor-motor peripheral neuropathy" and "L 2-3

26

27  _____

[4] Plaintiff does not explain what the Disability Placement Program is.

28

Lumbar Radiculopathy." (Doc. No. 90, ¶ 13.) In September 2015, plaintiff transferred to KVSP.

In October 2015, at KVSP, plaintiff visited the medical clinic to see a nurse. During plaintiff's visit, three correctional officers and Lozovoy approached him. Lozovoy said, "I'm going to take your wheelchair." (*Id.* ¶ 16.) Plaintiff attempted to explain to Lozovoy that he had proper documents authorizing his wheelchair accommodations. Lozovoy replied, "I don't care what any doctor said," told plaintiff again that he would take away his wheelchair, and removed plaintiff from the Disability Placement Program without a medical examination. (*Id.* ¶¶ 18-19.) The correctional officers pushed plaintiff's wheelchair to the clinic exit, lifted plaintiff out of his wheelchair, and "placed" him on the ground, causing him sharp pain in his lower back. (*Id.* ¶ 20.) The correctional officers then placed plaintiff back in his wheelchair, moved him to his cell, placed him on the floor next to his toilet, and left.

Prison staff confiscated plaintiff's wheelchair in November 2015, after plaintiff's encounter with Lozovoy at the clinic. Plaintiff received a wheelchair again in the same month for a reason unidentified in the complaint, but a correctional officer took the wheelchair away later that month. Plaintiff submitted a request for wheelchair accommodations on November 19, 2015, but he had no access to a wheelchair or other accommodations until April 26, 2016— excepting a few, isolated occasions.[5] Plaintiff again lost wheelchair accommodations when Relevante decided to remove them on June 8, 2016. The next day, plaintiff submitted another request for wheelchair accommodations, and plaintiff received a brand-new wheelchair on June 28, 2016.

When plaintiff had no wheelchair accommodations, he suffered in several ways. He could not attend medical appointments or educational courses. He missed his work assignments and was subject to disciplinary actions as a result. He also had difficulties moving

---

[5] Plaintiff alleges that he had had no wheelchair accommodations for *six* months between November 19, 2015, and April 26, 2016 (Doc. No. 90, ¶ 28), but there are only five months between those two dates. This slight difference in the month-counting is immaterial.

himself within his cell when he used the toilet or ate his meals.  To accomplish those daily tasks, plaintiff had to get on the cell floor and use his arms to move.  (*Id*. ¶ 40.)

### ii.  Plaintiff's transfer to a new prison

Plaintiff alleges that defendants Ferris and Godfrey subjected him to a substantial risk of bodily harm and pain when they transported him from KVSP to High Desert State Prison ("HDSP").  On July 6, 2016, Ferris and Godfrey strip-searched plaintiff in his cell while he sat in a wheelchair.  When plaintiff took off his clothing, he was asked whether he could stand, and plaintiff said, "I[']m unable to stand[.]  I simply collapse."  (*Id*. ¶ 44.)  Ferris gave plaintiff some underwear, a transportation paper, and a thin jumpsuit.  Ferris and Godfrey then escorted plaintiff to a transport van, and on the way to the van, Godfrey told plaintiff that he could not take the wheelchair to HDSP because it belonged to KVSP.

Plaintiff complains of how Ferris and Godfrey transported him to HDSP.  Once the parties arrived at the van, Ferris and Godfrey placed a metal ladder against the vehicle, lifted plaintiff off the wheelchair, placed him on the metal ladder, and dragged him up the ladder. (*Id*. ¶ 48.)  Godfrey then dragged plaintiff on the metal floor of the van to the back of the vehicle.  Godfrey put handcuffs, waist chains, and shackles on plaintiff.  Godfrey told plaintiff, "Since you like to file complaints on staff, find a way to get off the floor on your own." (*Id*. ¶ 50.)  Ferris then said, "You[']re in for a bumpy ride" and slammed the van's door.  (*Id*. ¶ 51.)  On the way to HDSP, Ferris drove aggressively over what felt like a rough road. Plaintiff was tossed about on the metal floor of the van.  The van had empty seats, and plaintiff begged Ferris to stop the van and place him in one of the seats.  Ferris, however, ignored plaintiff and continued to drive for about two hours, until he stopped the van at a gas station. There, Godfrey opened the van, lifted plaintiff from the van's floor, placed him in an empty seat, and buckled him into a seat, before proceeding to HDSP.

### b. Cognizable claims

The court screened plaintiff's original complaint and allowed him to proceed on three sets of claims:

(1) deliberate-indifference claims under the Eighth Amendment against Lozovoy and Relevante: Lozovoy removed plaintiff's wheelchair accommodations on October 22, 2015, and Relevante removed plaintiff's wheelchair accommodations on June 8, 2016;

(2) conditions-of-confinement claims under the Eighth Amendment against Ferris and Godfrey: on July 6, 2016, Ferris and Godfrey subjected plaintiff to a substantial risk of bodily harm and pain while they transported him from KVSP to HDSP; and

(3) retaliation claims under the First Amendment against Ferris and Godfrey: on July 6, 2016, Ferris and Godfrey subjected plaintiff to a substantial risk of bodily harm and pain in retaliation for plaintiff's complaints against prison staff.

(Doc. Nos. 5, at 3-5, 9-12, 18; 17, at 1-2.)

Plaintiff now splits his existing claims into separate causes of action and purports to assert a few new claims. He lists twelve causes of action in the second amended complaint:[6]

(1) an Eighth Amendment claim against Lozovoy for removing plaintiff's wheelchair accommodations without an evaluation;

(2) an Eighth Amendment claim against Relevante for removing plaintiff's wheelchair accommodations without an evaluation;

(3) Eighth Amendment claims against Ferris and Godfrey for taking away plaintiff's wheelchair;

(4) Eighth Amendment claims against all defendants for denying access to qualified medical personnel;

(5) Eighth Amendment claims against all defendants for denying adequate medical treatment;

(6) Eighth Amendment claims against all defendants for subjecting plaintiff to services of unqualified medical personnel;

(7) Eighth Amendment claims against Ferris and Godfrey for leaving plaintiff on the floor of a van in restraints;

(8) Eighth Amendment claims Ferris and Godfrey for taking away plaintiff's wheelchair, dragging him across the steel floors of the van, leaving plaintiff unstable and unsupervised, and driving abusively for hours;

---

[6] A "cause of action" differs from a "claim." *See Nagrampa*, 469 F.3d at 1264 n.2; JAMES WM. MOORE, 5 FED. PRAC. & PROC. CIV. § 1219 (Matthew Bender 3d ed.) ("Rule 8(a) eliminates the concept of 'cause of action.'"). The differences between the two terms are immaterial for screening, and plaintiff uses them interchangeably, so the undersigned takes plaintiff to mean that he wishes to add the causes of action listed below as new claims.

(9)  First Amendment claims against Ferris and Godfrey for retaliating against plaintiff for filing grievances by subjecting him to painful ride in the van;

(10)  state-law negligence claims against unspecified defendants for interfering with plaintiff's medical treatment;

(11)  state-law claims against all defendants for violating the California Constitution's prohibition against cruel and unusual punishment; and

(12)  "causation" claims against all defendants for causing plaintiff's injuries.

(Doc. No. 90, ¶¶ 55-67.)  The court has already found the first, second, eighth, and ninth causes of action cognizable.  (Doc. Nos. 5, at 9-12, 18; 17, at 2.)  The court should strike the third and seventh causes of action as redundant because they are included in the eighth cause of action. *See* Fed. R. Civ. P. 12(f).[7]  For the reasons discussed below, the remaining causes of action add no cognizable claim.

### i.  Access to qualified medical personnel (fourth and sixth causes of action)

Plaintiff alleges that defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by denying him "access to qualified medical personnel[;] The (PCP) ordered tele-neurology consult was based on Dr. Rice['s] 8-25-15 NCS/EMG report." (Doc. No. 90, ¶ 59).  The undersigned takes this allegation to mean that plaintiff needed a consultation with a professional with qualifications in teleneurology (a branch of telemedicine that provides consultations for neurological problems from a remote location using telephone or the Internet).  Plaintiff does not allege that he informed any defendant of his need for such a consultation.  Neither does plaintiff allege, even generally, that defendants knew of his need for such a consultation.  *See* Fed. R. Civ. P. 9(b).  Thus, plaintiff has alleged no fact that can support a claim of deliberate indifference under the Eighth Amendment.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

---

[7] Plaintiff appears to believe that he might have some disadvantage if he fails to list all legal theories available to him, but he is mistaken; a complaint needs to contain factual allegations that entitle the plaintiff to relief, but need not offer a list of all legal theories.  *See, e.g.*, *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008).

Similarly, plaintiff alleges in his sixth cause of action that defendants subjected him to the services of unqualified medical personnel, Lozovoy and Relevante. (Doc. No. 90, ¶ 61.) An inmate has no constitutional right to choose his doctor. *See Steinocher v. Smith*, No. 12-cv-467, 2017 WL 416091, at \*14 (E.D. Cal. Jan. 31, 2017) (collecting cases); *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) ("[An inmate] was not entitled to dictate the terms of his care."). A nurse practitioner and a physician's assistant routinely treat patients, both inside and outside prison. Plaintiff does not explain how Lozovoy and Relevante lacked the qualifications to treat him. True, Lozovoy and Relevante allegedly removed plaintiff's wheelchair accommodations when he needed them, but plaintiff's position is that they did so with deliberate indifference; those allegations concern Lozovoy's and Relevante's culpable state of mind, not their competence.[8]

Plaintiff also alleges in the sixth cause of action that Lozovoy and Relevante violated certain standard procedures when they signed a "Delegation of Services Agreement" and "Duty Statement." (*Id.*) Plaintiff does not explain what these documents are, and, even though he refers to some attachments, the amended complaint contains no attachment. Thus, his vague allegations do not provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And violating standard procedures, without more, does not establish deliberate indifference. *See Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014); *Vaughn v. Cole*, No. 09-cv-2030, 2011 WL 6012500, at \*3 (E.D. Cal. Dec. 1, 2011) (collecting cases).

### ii. Denial of adequate medical treatment (fifth cause of action)

Plaintiff purports to assert another deliberate-indifference claim under the Eighth Amendment for denial of medical treatment for his back injuries. Plaintiff alleges that defendants denied him adequate medical treatment even though he requested medical treatment at KVSP. (Doc. No. 90, ¶¶ 23, 60.) Plaintiff does not allege who rejected his requests, so he

---

[8] Plaintiff argues in his motions for summary judgment that Lozovoy and Relevante lacked the authority to disagree with a physician. The undersigned will address that argument below as part of the summary judgment analysis.

has not alleged how any defendant caused the denial of treatment. *See Lacey v. Maricopa Cty.*,
693 F.3d 896, 915 (9th Cir. 2012) (discussing Section 1983's causation requirement); *Mann v.*
*Cty. of San Diego*, 147 F. Supp. 3d 1066, 1089 (S.D. Cal. 2015) (lack of causation defeats
claims under Section 1983).[9]  Plaintiff also alleges, "The plaintiff was allowed to have w/c
accommodations to attend medical appointments that resulted in the ongoing denial of
treatment for plaintiff's spinal cord and lower back condition by medical staff members who
had already decided prior to plaintiff's arrival to deny the plaintiff treatment for his spinal cord,
and lower back condition." (Doc. No. 90, ¶ 29.)  This allegation is conclusory, and without
more, does not allow the court to infer that anyone denied plaintiff medical care with deliberate
indifference.

### iii. Negligence claims (tenth cause of action)

Plaintiff contends that defendants acted negligently in providing him with medical care.
(*Id*. ¶ 65.)  Under the California Tort Claims Act, a plaintiff may not sue a public employee for
damages unless he has presented a written claim to the state Victim Compensation and
Government Claims Board within six months of the accrual of his action.  *See* Cal. Gov't Code
§§ 905, 911.2(a), 945.4, 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477
(9th Cir. 1995).  The court has already explained to plaintiff that he needed to allege in his
complaint (1) the time when he submitted such a claim and (2) the claimed grounds.
(Doc. No. 85, at 7.)  *See Nnachi v. City and County of San Francisco*, 2015 WL 1743454, at *6
(N.D. Cal. 2015) (dismissing state tort claim for failure to plead facts regarding "when he
submitted such a claim, what he stated in that claim, and when the City denied it").  The CTCA
also requires that a claim be adjudicated by the Board before a plaintiff can assert that claim in
court.  *See* Cal. Gov't Code § 945.4.

---

[9] What is more, one of plaintiff's own exhibits attached to the original complaint states that
plaintiff has been receiving medical treatment. (Doc. No. 1, at 55.)  Another of plaintiff's
exhibits attached to the original complaint states that prison officials offered him the services of
a registered nurse, which he refused.  (*Id*. at 90.)

Plaintiff states in his motion for leave to amend—not in his complaint—that he filed a written claim on September 21, 2016, but he does not identify the grounds he raised in that claim. (Doc. No. 89, at 2.) Plaintiff also states that his September 21, 2016 claim has not been decided. (*Id*.) Thus, plaintiff cannot proceed on negligence claims for damages for two separate reasons: he has failed to identify the grounds presented in his CTCA claim, and his CTCA claim has not been adjudicated.

The CTCA applies to actions involving damages, but plaintiff seeks damages and injunctive relief. "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009). A harm sustained from some past conduct presents no "case or controversy regarding injunctive relief," absent "continuing, present adverse effects," *Bayer v. Neiman Marcus Grp., Inc*., 861 F.3d 853, 864 (9th Cir. 2017), or "real or immediate threat . . . that he will again be wronged in a similar way," *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Further, an injunctive order can bind only the parties, their officers, agents, employees, and attorneys, and other persons who act in concert with the parties. Fed. R. Civ. P. 65(d)(2).

Plaintiff asks for medical treatment for his spinal injury. (Doc. No. 90, ¶ 7.) This request for injunctive relief is moot because he is now receiving medical care at his new prison and at an off-site hospital. (*See, e.g*., Doc. No. 133-3, at 36-37.) *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (finding request for injunctive relief moot when prisoner is no longer subject to challenged prison conditions after transferring to new facility). Plaintiff also asks for "reconstructive surgery" as part of his medical treatment (Doc. No. 90, ¶ 7), but he does not explain how defendants here—a physician's assistant, a nurse, and two correctional officers— could perform reconstructive surgery. The court cannot compel a non-party surgeon to perform surgery on plaintiff. Thus, plaintiff has not stated a claim upon which relief can be granted, and he may not proceed on his negligence claim. *See* Fed. R. Civ. P. 12(b)(6);

1  *Giraldo v. Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 371, 391 (Cal. Ct. App. 2008) (precluding

2  state-law claim that does not allow damages or injunctive relief).

3  ### iv. California Constitution (eleventh cause of action)

4  Plaintiff contends that defendants violated the prohibition against cruel and unusual

5  punishment under the California Constitution Article I, Section 17.  (Doc. No. 90, ¶ 66.)  A

6  state's highest court is "the final arbiter of what is state law," *Poublon v. C.H. Robinson Co.*,

7  846 F.3d 1251, 1266 (9th Cir. 2017), but the California Supreme Court has not decided

8  whether a private citizen can sue for damages under Article I, Section 17.  The court, therefore,

9  looks to state appellate decisions for guidance.

10  A state appellate court's decision provides guidance on state law, and a federal court

11  cannot disregard such a decision without "convincing indications that the state supreme court

12  would hold otherwise."  *Asante v. California Dep't of Health Care Servs.*, 886 F.3d 795, 799

13  (9th Cir. 2018).  In *Giraldo v. Dep't of Corr. & Rehab.*, the California Court of Appeals held

14  that a private citizen cannot seek damages for violations of Article I, Section 17.  85 Cal. Rptr.

15  3d at 388.  The *Giraldo* decision faithfully applied the framework for determining whether a

16  private right of action exists set forth by the California Supreme Court in *Katzberg v. Regents*

17  *of Univ. of California.*  58 P.3d 339 (2002).

18  Under *Katzberg*, a court first considers whether it can infer from the constitutional

19  provision at issue an intent to authorize a private right of action for damages.  58 P. 3d at 350.

20  Second, if the court can infer no such intent, the court considers what the California Supreme

21  Court described as the factors from *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

22  *Narcotics*, 403 U.S. 388 (1971), and its successors: "whether an adequate remedy exists, the

23  extent to which a constitutional tort action would change established tort law, and the nature

24  and significance of the constitutional provision."  *Katzberg*, 58 P.3d at 350.  If these factors

25  weigh against recognizing a private action for damages, the analysis ends, and the court will

26  not recognize a private action for damages under the constitutional provision at issue.  *Id.*  If,

27  on the other hand, the *Bivens* factors favor recognizing a private right action for damages, the

28  court proceeds to the third step and considers whether there are other "special factor[s]" that

counsel against recognizing a private right of action. *Id.* Those factors may include "deference
to legislative judgment, avoidance of adverse policy consequences, considerations of
government fiscal policy, practical issues of proof, and the competence of courts to assess
particular types of damages." *Id.*

In *Giraldo*, applying *Katzberg* the court of appeals first held that it could not infer any
intent to create a private right of action in Article I, Section 17. *See Giraldo*, 85 Cal. Rptr. 3d
at 390. Second, the court concluded that the *Bivens* factors, considered together, weighed
against recognizing a private action for damages. *See id.* As the court explained, even though
the prohibition against cruel and unusual punishment was "[u]ndoubtedly" significant, other
factors weighed against finding a private right of action. *See id.* at 391. The court held that
recognizing a private right of action for damages would change existing tort law because no
court had recognized such a right of action arising from Article I, Section 17. *Id.* at 390. The
court also held that the plaintiff had adequate alternative remedies: the plaintiff could sue under
California tort law and Section 1983. *Id.* at 389-91. Several courts have followed *Giraldo*,[10]
and the undersigned sees no convincing indication that the California Supreme Court would
disagree with the *Giraldo* decision. The court should follow the *Giraldo* decision and hold that
Article I, Section 17 provides no private right of action for damages.

Plaintiff cannot obtain injunctive relief as discussed above, and he cannot recover
damages under *Giraldo*. Plaintiff has stated no claim upon which relief could be granted, and
so may not proceed on a claim under Article I, Section 17.

### v. Causation (twelfth cause of action)

Plaintiff listed "causation" as a cause of action in the amended complaint. (Doc. No. 90,
¶ 67.) Causation, as this court has explained, is not a cognizable claim on its own.
(Doc. No. 5, at 17.)

---

[10] *See, e.g.*, *Davenport v. Lee*, No. 09-cv-3091, 2012 WL 761656, at *6 (E.D. Cal. Mar. 7,
2012).

### vi.  Other matters

In his motion for leave to amend, plaintiff seeks reconsideration of the court's previous order denying his request to include his previous lawsuits in this case.  (*See* Doc. Nos. 85, at 3; 89, at 2.)  He argues that he has "listed" his previous lawsuits in his amended complaint (Doc. No. 89, at 2), but, as the court has already explained (Doc. No. 85, at 3), a complaint must be "complete in itself without reference to the prior or superseded pleading" under Local Rule 220.  Plaintiff does not allege facts from his previous lawsuits, so his request to bring those lawsuits into this case should be denied.  The court need not consider whether claim or issue preclusion bars plaintiff from asserting in this case the claims from his previous lawsuits.

Plaintiff also argues that in his claims against Ferris and Godfrey he alleges not "transportational violations" but rather "interfering intentionally with a treatment once prescribed."  (Doc. No. 89, at 2.)  Intentionally interfering with medical treatment can establish deliberate indifference, *Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011), but plaintiff does not allege or explain how Ferris and Godfrey interfered with his medical treatment. Neither does he allege that Ferris and Godfrey knew about any medical treatment prescribed. Plaintiff alleges that Ferris and Godfrey caused him pain when they transported him to a new prison, but causing pain differs from interfering with medical treatment.

### c.  Conclusion on leave to amend and screening

The court should grant plaintiff's motion for leave to amend because the proposed amendment adds new factual allegations and notifies defendants of unpleaded issues.  The second amended complaint supersedes the original complaint and is now the operative pleading for plaintiff.  The second amended complaint, however, adds no cognizable claim, and plaintiff can proceed only on the claims that the court has found cognizable in the previous screening order.  (*See* Doc. Nos. 5, at 3-5, 9-12, 18.)

Allowing plaintiff to amend the complaint does not affect the summary judgment analysis below.  Plaintiff raises arguments in his summary judgment briefs related to the newly-made allegations as if the court has already allowed him to add those allegations.  For example, his arguments against Lozovoy and Relevante rely on the findings of medical professionals not

mentioned in the original complaint. (*See, e.g.*, Doc. No. 116, at 12-13.) As for the other new allegations against Ferris and Godfrey, they are immaterial. Plaintiff does not challenge the legality of his strip search by Ferris and Godfrey, and whether plaintiff told them that he could not stand matters little when those defendants saw him in a wheelchair. Thus, the undersigned will issue findings and recommendations on the plaintiff's motions for summary judgment, without asking for another round of briefing to address the new allegations in the second amended complaint.

### III. Plaintiff's motions for summary judgment

Plaintiff moves for summary judgment on all his claims. (Doc. Nos. 116, 117, 125.) For each of his claims, whether the defendant was deliberately indifferent is genuinely disputed, and these factual disputes preclude summary judgment for plaintiff on each of his claims.

A district court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable trier of fact could find in favor of either party at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The dispute is material if it "might affect the outcome of the suit under the governing law." *See id.* at 248. The showing required to obtain summary judgment depends on the movant's burden of persuasion at trial: a movant who bears that burden must present evidence supporting every element of a claim or defense; the movant without the burden can show that the opponent cannot prove an element of a claim or establish all elements of an affirmative defense.[11] The court must view the record "in the light most favorable" to the nonmovant, *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018), and may not assess witnesses' credibility or weigh evidence—tasks reserved for the jury, *Soto v. Sweetman*, 882 F.3d 865, 877 (9th Cir. 2018).

---

[11] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *compare Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (movant with burden of proof at trial), *with Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (without burden of proof at trial).

Familiar standards govern burden-shifting at the summary judgment stage. *See Celotex Corp.*, 477 U.S. at 330-31. The movant bears the initial burden of production and must present evidence showing prima facie entitlement to summary judgment. *See id.* at 331. The burden then shifts to the party opposing summary judgment to produce evidence showing a genuine dispute over a material fact. *Id.* The movant bears the ultimate burden of persuasion. *Id.* at 330; *Friedman*, 833 F.3d at 1188.

### a. Summary judgment record

To decide a motion for summary judgment, a district court may consider the types of materials listed in Rule 56(c). These include depositions, documents, electronically stored information, affidavits or declarations, stipulations, party admissions, and interrogatory answers, "or other materials." Fed. R. Civ. P. 56(c). "While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). A party may object that an opponent's evidence "cannot be presented in a form that would be admissible" at trial, *see* Fed. R. Civ. P. 56(c)(2), and the court must rule on evidentiary objections, before deciding a summary judgment motion, *see Norse*, 629 F.3d at 973; *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 845 (9th Cir. 2004).

Here, the undersigned will address three evidentiary matters. First, Lozovoy and Relevante object to Asberry's statements about his medical conditions. They argue that "Asberry's statements and opinions regarding medical conditions and diagnoses, their causes, appropriate treatment, and prognoses lack foundation and include inadmissible hearsay not subject to any exception to the hearsay rule." (Doc. No. 126-3, at 1-2.) These objections are conclusory; the court need not consider "boilerplate recitations of evidentiary principles or blanket objections without analysis." *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013). Besides, plaintiff can explain that he suffered pain when he did not have wheelchair accommodations because he has personal knowledge of his bodily condition; such statement requires no specialized medical knowledge. *See* Fed. R.

Evid. 701-02. Thus, the undersigned will consider plaintiff's descriptions of his own bodily conditions below.

Second, defendants object to several of plaintiff's factual propositions on the basis that plaintiff has failed to cite supporting evidence. (Doc. Nos. 126-2, 127-2, 129-2.) Plaintiff's failure to cite supporting evidence burdens both the court and defendants, who have no obligation to assist plaintiff by digging through the record and find evidence supporting plaintiff's arguments. Still, the court may consider materials in the record not cited by the parties. *See* Fed. R. Civ. P. 56(c)(3). In this case, because plaintiff has no counsel and the law favors adjudication on the merits, the undersigned has considered evidence beyond that cited by plaintiff. The undersigned could not find evidence supporting certain of plaintiff's propositions, which are identified below.

Third, the parties have submitted medical records from several medical professionals who have examined plaintiff. Some of these records contain the professionals' opinions based on their specialized knowledge in medicine; they are potentially expert opinions. *See* Fed. R. Evid. 702. No party objects to the opinions on the basis that they cannot be presented in an admissible form at trial, and, in any event, the undersigned will consider only the portions of the medical records that are not medical opinions (e.g., the portion stating that plaintiff made no effort to move his legs during examinations). The portions of the medical records that are not opinions can be presented in a form admissible at trial.[12]

###     i. Wheelchair accommodations

The background facts of this case and plaintiff's allegations are stated above, so the undersigned will state only essential facts here. Plaintiff had authorization for wheelchair accommodations before he arrived to KVSP. At KVSP, on October 22, 2015, Lozovoy removed plaintiff's wheelchair accommodations. (Doc. No. 116, at 64.) Plaintiff then requested wheelchair accommodations, and prison staff allowed him to use a wheelchair on a

---

[12] The medical professionals' notations of what they observed during their examination of plaintiff are present sense impressions. *See* Fed. R. Evid. 803(1). The medical records that contain the physicians' notes are business records. *See* Fed. R. Evid. 803(6).

few occasions, but plaintiff never received formal authorization from a physician for wheelchair accommodations.  (*See* Doc. No. 116, at 75-88.)  Relevante saw plaintiff on June 8, 2016, and denied wheelchair accommodations.  (Doc. No. 128, at 25.)  Plaintiff proceeds against Lozovoy and Relevante for denying him wheelchair accommodations.

The central dispute here is whether Lozovoy and Relevante knew that plaintiff needed wheelchair accommodations and decided nonetheless to remove such accommodations. Plaintiff, Lozovoy, and Relevante all rely on plaintiff's medical records from various physicians, who examined plaintiff before he arrived at KVSP and during his confinement at Calipatria State Prison ("CSP") and Salinas Valley State Prison ("SVSP").

At CSP, Kim authorized plaintiff to use a mobility vest, bottom bunk, wheelchair-accessible cell, and—intermittently—a wheelchair.  (*See* Doc. No. 116, at 38-40.)  Plaintiff states that he had "permanent" wheelchair accommodations (Doc. No. 118, at 3), but this is not entirely accurate.  Kim allowed plaintiff "permanent" accommodations only for housing: plaintiff was allowed a wheelchair-accessible, ground-floor cell and a bottom bunk. (Doc. No. 116, at 40.)  Kim wrote in the same document authorizing wheelchair accommodations that plaintiff should have "Limited Wheelchair User Accommodations" (*id*.), and another exhibit submitted by plaintiff shows that physicians, as standard procedure, reevaluate an inmate's conditions when he transfers to a new institution (*id*. at 85).  Thus, plaintiff did not have permanent authorization to keep his wheelchair.

During his stay at SVSP, plaintiff saw Koshy, a neurologist, who recommended two diagnostic tests: an EMG and an NCS.  (Doc. No. 126-2, ¶ 4.)  Plaintiff then saw Birdsong, a physician at SVSP, who noted that plaintiff "demonstrated poor effort" during the examination. (Doc. No. 128, at 10, 13.)  Plaintiff also saw Rice, a physician at an off-site hospital, who reported his findings on several diagnostic tests, including an EMG and an NCS. (Doc. No. 116, at 42-47.)  Plaintiff later saw a physician whose name is illegible, and that physician wrote that plaintiff had "prior normal EMG/NCS," that he had a "repeat study recently," and that plaintiff's "physical findings" were "difficult to interpret" because of plaintiff's poor efforts.  (*See* Doc. No. 117, at 55-56.)  The physician ordered a teleneurology

consultation.  (Doc. No. 126-2, ¶ 7.)  Despite these physicians' notes, the record does not show ` that any physician decided to remove plaintiff's wheelchair accommodations.  Neither Lozovoy nor Relevante makes such an admission.

At KVSP, Lozovoy, a nurse practitioner, removed plaintiff's wheelchair accommodations on October 22, 2015.  (Doc. Nos. 16-20.)  He wrote, "chronic LBP [lower back pain] refusing formulary non-narcotic pain management and refusing to walk—not supported by imaging testing/nerve conduction studies."  (Doc. No. 128, at 20.)  Afterward, plaintiff submitted request forms for wheelchair accommodations, and Sao, a physician, evaluated him on December 16, 2015.  (Doc. 128, at 22-23.)  After examining plaintiff, Sao wrote (1) that Sao could not substantiate plaintiff's claim that he could not walk, and (2) that he could not recommend a wheelchair, walker, or cane.  (*Id*. at 22-23.)  Sao also noted that plaintiff's quadriceps and hamstrings were "quite muscular" despite plaintiff's claim that he could not walk.  (*Id*. at 22.)

When Relevante, a physician's assistant, saw plaintiff on June 8, 2016, plaintiff had a wheelchair without authorization.  (Doc. No. 128, at 25.)[13]  Relevante reviewed plaintiff's x-ray and examined him.  (*Id*.)  He noted that plaintiff could "do forward flexion extension lat rotation while sitting in wheelchair.  left hip flexion abduction ext rotation WNL no pain.  LE examination subjective weakness, uncooperative to get up to exam table."  (*Id*.)  Relevante concluded that plaintiff did not need a wheelchair and recommended the "[r]emoval of wheelchair today."  (*Id*.)

In addition to medical records, plaintiff has other admissible evidence to support his claim that Lozovoy and Relevante disregarded his need for wheelchair accommodations.  Plaintiff's deposition testimony indicates that he was in a wheelchair when Lozovoy saw him.  (*See* Asberry Dep. 43:12-44:8, March 14, 2018.)  Plaintiff also testified that he tried to explain to Lozovoy that Kim had authorized his wheelchair accommodations, but Lozovoy "was

---

[13] A correctional officer had given plaintiff the wheelchair when prison officials placed him in administrative segregation, and plaintiff kept the wheelchair without authorization when he returned to his cell.  (*See* Asberry Dep. 62:19-64:14, March 14, 2018.)

saying he didn't care what no doctor says. He was taking the wheelchair." (*Id*. at 44:3-8.) As

for plaintiff's visit with Relevante, plaintiff testified that it lasted only "a couple minutes."

(*Id*. at 67:18-68:2.) According to plaintiff, he told Relevante that he had been in a wheelchair

for about four years, but Relevante decided to take the wheelchair away without an

explanation. (*Id*. at 67:14-17, 68:11-19.)

### ii. Transportation

As for plaintiff's claims against Ferris and Godfrey, only one dispute matters for this

opinion: whether the defendants disregarded plaintiff's substantial risk of bodily harm or pain

when they transported him from KVSP to HDSP. Plaintiff states in his declaration the

following facts: (Doc. No. 125.) Godfrey dragged him up a metal ladder into the transport

van. (*Id*. at 45.) Once they were inside the van, Godfrey dragged him across the floor of the

van toward the back. (*Id*.) Godfrey then said, "Since you like to file complaints on staff[,] find

a way to get off the floor on your own. (*Id*.) Plaintiff was placed in full restraints. (*Id*. at 46.)

Ferris then shut the back doors of the van and said, "You['re] in for a bumpy ride."

(*Id*. at 46.)[14] While driving to HDSP, Ferris drove "abusively," causing plaintiff to be tossed

about. (*Id*.) Plaintiff begged and pleaded for Ferris and Godfrey to stop and place him in one

of the empty seats, but they ignored him. (*Id*.) The parties arrived at a gas station about two

hours later, and Godfrey then entered the van, placed plaintiff in a seat, and buckled plaintiff's

seatbelt. (*Id*.)

Ferris and Godfrey oppose plaintiff's facts with their declarations. Ferris states in his

declaration that he did not drive "abusively" and that plaintiff refused to sit in a seat:

> Plaintiff was helped into the transportation vehicle, but refused to
> sit in a seat and refused to be buckled. He insisted on riding on the
> transportation vehicle floor during the initial portion of the trip. I
> did not fail to buckle Plaintiff into a seat because he filed staff
> complaints. I did not buckle him in a seat because he refused to
> get into the seat. We exited the KVSP grounds and I began driving
> to the Interstate 5 on-ramp. The Interstate 5 on-ramp is
> approximately 45 miles from KVSP traversing several two-lane,

---

[14] Statements from Ferris and Godfrey are admissible, as they are opposing parties' statements
excluded from the definition of hearsay. *See* Fed. R. Evid. 801(2).

paved, country roads, including State Route 43; these roads were fairly worn. The transportation van typically rode "bumpy" because of its age and condition. On the route from KVSP to Interstate 5, I stayed on the road the entire time, followed the speed limit, and with the exception of ensuring that Plaintiff was seat-belted, obeyed all traffic laws. I did not drive in a reckless or "abusive" manner.

(Doc. No. 129-3, ¶¶ 13-18.) Godfrey recounts similar facts in his declaration:

Plaintiff was helped into the transportation vehicle, but refused to sit in a seat and refused to be buckled. He insisted on riding on the transportation vehicle floor during the initial portion of the trip. I did not fail to buckle Plaintiff into a seat because he filed staff complaints. I rode in the passenger seat during the July 6, 2016 transport from KVSP to HDSP. The transportation van typically rode "bumpy" because of its age and condition. When we stopped at the gas station in Kettleman City, I exited the passenger seat van and opened the back doors to check on Plaintiff. I went inside the gas station store and purchased a water for Plaintiff.

(Doc. No. 129-4, ¶¶ 6-11.) Ferris and Godfrey do not admit or deny that plaintiff was restrained on the floor of the van or that Godfrey placed plaintiff in a seat once they arrived at a gas station.

### b. Claims against defendants Lozovoy and Relevante

Plaintiff moves for summary judgment on his medical deliberate-indifference claims against Lozovoy and Relevante. (Doc. Nos. 116, 117.)[15] Summary judgment, however, is precluded by a genuine dispute of material fact as to whether Lozovoy and Relevante were deliberately indifferent to plaintiff's need for wheelchair accommodations.

---

[15] The original screening order characterized plaintiff's claims as "medical deliberate indifference" claims. (Doc. No. 5, at 18.) The same order rejected plaintiff's claims for unconstitutional conditions of confinement and explained, "[Plaintiff] does not specify which, if any, of the Defendants were aware of his difficulties. Nor does he state any additional facts that would tend to show that the Defendants exhibited deliberate indifference toward his needs in this regard." (*Id*. at 11.) A person who takes a wheelchair away from a disabled man can infer the difficulties of not having a wheelchair. The undersigned has considered whether Lozovoy and Relevante have subjected plaintiff to unconstitutional conditions of confinement. The analysis, however, does not change even if the claims are characterized as conditions-of-confinement claims because the analysis is the same for both claims, and there is a genuine dispute as to defendants' deliberate indifference, as discussed below.

The Eighth Amendment forbids cruel and unusual punishment. U.S. Const. amend. VIII. `

Cruel and unusual punishment can take many forms, and the deprivation of basic needs such as

adequate food, clothing, shelter, medical care, or safety can violate the Eighth Amendment.

*See Farmer v. Brennan*, 511 U.S. 825, 832-37 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27

(1984). When an inmate challenges a prison condition as cruel and unusual punishment, the

deliberate-indifference standard from *Farmer v. Brennan* governs. *See* 511 U.S. at 832-37.

That is, a defendant violates the Eighth Amendment's prohibition against cruel and unusual

punishment when (1) the defendant causes a deprivation that is "objectively, sufficiently

serious," and (2) the defendant is deliberately indifferent to the deprivation. *Id.* at 834; *accord*

*Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

A deprivation is sufficiently serious when it results "in the denial of the minimal civilized

measure of life's necessities." *Lemire v. California Dep't of Corr. & Rehab*., 726 F.3d 1062,

1074 (9th Cir. 2013) (citation omitted). Courts have found such deprivation in an array of

contexts, such as when an inmate is exposed to substantial risk of bodily harm, when

unnecessary pain is inflicted, or even when a deprivation causes extreme and unnecessary

humiliation.[16] A plaintiff, however, may not recover for mental or emotional injury without

having suffered physical injury, save for a few exceptions. *See, e.g*., *Grenning v. Miller-Stout*,

739 F.3d 1235, 1238 (9th Cir. 2014); *Oliver v. Keller*, 289 F.3d 623, 629 (9th Cir. 2002).

Further, the deprivation at issue must be "extreme," *Hudson v. McMillian*, 503 U.S. 1, 9

(1992), and courts assess the deprivation objectively without relying on their own perceptions

of decency, *see LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

---

[16] *See, e.g*., *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (shackling an inmate to a post for seven hours under hot sun, giving water only twice, with no bathroom break violates the Eighth Amendment); *Spain v. Procunier*, 600 F.2d 189, 197 (9th Cir. 1979) (finding cruel and unusual punishment when prison officials had "no justification at all for requiring the prisoners to bear the visible burdens of neck chains during all visits to family, friends, and counsel"); *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (reasoning that unnecessarily parading an inmate in a see-through jumpsuit, with his genitals exposed, can be cruel and unusual punishment); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 574 (6th Cir. 2013) (shackling a pregnant woman during labor when she posed no flight risk violates "contemporary standards of human decency").

The second requirement—deliberate indifference—is subjective. The defendant must have known the "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" for the plaintiff, and the defendant must have actually drawn that inference. *Farmer*, 511 U.S. at 837; *see Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016). The requirement that the defendant actually drew the inference is critical: the defendant's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *See Farmer*, 511 U.S. at 838. The court must state "precise findings or conclusions" on the defendant's state of mind before finding deliberate indifference. *See LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

Here, plaintiff has carried his initial burden for summary judgment on his claims against Lozovoy and Relevante. He testified during his deposition that he could not walk and that he had been feeling pain in his legs for the past eight years. (Asberry Dep. 18:17-19:8, March 14, 2018.) The parties agree that Lozovoy and Relevante denied wheelchair accommodations. A reasonable jury could find that plaintiff's condition was objectively and sufficiently serious.

Plaintiff also has evidence that could support a finding that Lozovoy and Relevante were deliberately indifferent. Plaintiff testified during his deposition that Lozovoy did not examine him and that he tried to explain to Lozovoy that he had the authorization for wheelchair accommodations, but Lozovoy "was saying he didn't care what no doctor says. He was taking the wheelchair." (*Id.* at 53:1-3, 44:3-8.) As for Relevante, plaintiff testified that the physician assistant's examination lasted only a few minutes, that he told Relevante that he had been in a wheelchair for years, and that Relevante decided to take his wheelchair away without an explanation. (*Id.* at 67:14-17, 68:11-19.) A reasonable jury could find that Lozovoy and Relevante did not exercise medical judgment at all and disregarded plaintiff's need for wheelchair accommodations.

Plaintiff has carried the initial burden for summary judgment, and the burden shifts to Lozovoy and Relevante to adduce evidence that raises a genuine dispute of a material fact. Lozovoy and Relevante present evidence to dispute whether they were deliberately indifferent

to plaintiff's need for wheelchair accommodations.[17] Lozovoy and Relevant are nonmovants, so the court must draw all reasonable inferences in their favor. Lozovoy's notes stating that plaintiff refused non-narcotic medicine, that he refused to walk, and that diagnostic tests did not support plaintiff's need for wheelchair accommodations (Doc. 128, at 20) indicate that Lozovoy reviewed plaintiff's medical record and concluded that plaintiff was faking his symptoms. Plaintiff's claim that Lozovoy never explained his reasons for removing wheelchair accommodations and Lozovoy's alleged statement that he did not care what any doctor said may cast doubt whether Lozovoy actually reviewed plaintiff's medical records and whether Lozovoy's stated reason was pretextual. Lozovoy's credibility, however, is for the jury to consider.

As for Relevante, his notes indicate that he examined plaintiff and observed that plaintiff did not cooperate with the examination before recommending that plaintiff's wheelchair be removed. (Doc. No. 128, at 25.) Relevante's observation that plaintiff did not cooperate during the exam supports a finding that Relevante thought plaintiff was faking his need for wheelchair accommodations. Plaintiff's deposition testimony that Relevante's examination lasted only a few minutes raises some doubt as to whether Relevante examined him in a meaningful way and whether the stated reason in Relevante's note is merely a pretext—but again, this must be evaluated by the jury. Whether Relevante was deliberately indifferent to plaintiff's need for wheelchair accommodations is genuinely disputed.

Plaintiff could prevail by showing that Lozovoy's and Relevante's decisions to deny wheelchair accommodations fell so far below the acceptable medical standards that their decisions constituted infliction of punishment. *See Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). The record, however, viewed in the light most favorable to Lozovoy and Relevante, presents a genuine dispute of fact whether these defendants drew the inference that plaintiff needed wheelchair accommodations.

---

[17] The parties dispute whether plaintiff had the medical need for wheelchair accommodations, but even if plaintiff had the medical need for wheelchair accommodations, plaintiff cannot prevail without showing deliberate indifference.

Plaintiff contends otherwise.  He argues that (1) Lozovoy and Relevante intentionally interfered with the treatment prescribed by other physicians; (2) Lozovoy, a nurse practitioner, and Relevante, a physician's assistant, had no authority to disagree with other physicians; (3) Lozovoy and Relevant failed to follow up on a physician's order to allow plaintiff to have a teleneurology consultation; (4) plaintiff saw Relevante on June 8, 2016, for his spinal cord, lower back pain, and mobility impairment, but Relevante did nothing for plaintiff; (5) Relevante's failure on June 8, 2016, to follow the institutional protocol of obtaining plaintiff's medical history shows knowledge of plaintiff's risk of serious harm; (6) Lozovoy and Relevante failed to provide access to specialist care; (7) Relevante failed to comply with his discovery obligations; and (8) the court should grant summary judgment on his negligence claims against defendants.  These arguments, however, do not show plaintiff's entitlement to summary judgment.

First, plaintiff has not shown that Lozovoy and Relevante knew about any treatment prescribed by other physicians; indeed, plaintiff testified during his deposition that SVSP did not share his medical records with KVSP.  (Asberry Dep. 50:8-16, March 14, 2018.)  The notes from Lozovoy and Relevante do not mention any prescribed treatment.  Neither does plaintiff allege or present evidence that he informed these defendants about any treatment.  Lozovoy and Relevante could not ignore or disagree with any physician's opinion unless that opinion was known to them.

Second, even if Lozovoy and Relevante had reviewed plaintiff's entire medical record, only Kim opined that plaintiff needed wheelchair accommodations; other physicians who examined plaintiff after Kim's examination did not agree with Kim.  Mere disagreement between medical professionals does not show deliberate indifference, *see Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004), and a nurse and a physician's assistant cannot be deliberately indifferent by agreeing with some, but not all, physicians who had examined plaintiff.[18]

_____

[18] Further, one of plaintiff's exhibits shows that Lozovoy and Relevante were his primary

Third, plaintiff cites no evidence that Lozovoy and Relevante knew about the authorization for a teleneurology consultation.

Fourth, plaintiff's claim that Relevante did nothing on June 8, 2016, is inaccurate; plaintiff submitted Relevante's treatment notes from that date, and the notes show that Relevante examined plaintiff and prescribed acetaminophen for his pain. (Doc. No. 117, at 58.)

Fifth, violating an institutional protocol, without more, does not show deliberate indifference. *See Peralta*, 744 F.3d at 1087.

Sixth, an inmate has no constitutional right to choose his doctor, *see Harper*, 847 F.3d at 927, and plaintiff cites no evidence that he informed Lozovoy or Relevante that he needed to see a specialist. Plaintiff might have submitted a request form to see a specialist—even though he does not cite such a document—but he presents no evidence that Lozovoy or Relevante reviewed that request or were aware of it.

Seventh, plaintiff claims discovery violations, but he does not ask the court to compel the production of documents from Relevante; he argues instead that he had some difficulty obtaining evidence of Relevante's deliberate indifference because of Relevante's discovery violations, such as failure to respond, evasive responses, and late responses. (*See* Doc. No. 117, at 16-17.) In some circumstances, a court may consider a particular fact to be established as a sanction for a party's failure to cooperate in discovery. *See* Fed. R. Civ. P. 37(a)(4), (b)(2)(A)(i), (c)(1)(c). Relevante's discovery responses, however, (Doc. No. 117, at 88-96 (interrogatory responses), 100-07 (responses to requests for admissions)) are not so deficient as to warrant sanction.

Eighth, plaintiff asks for summary judgment for negligence claims that the court has not allowed to proceed beyond screening, and even though the court may allow plaintiff to amend the complaint at summary judgment, *see Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014), plaintiff fails to state negligence claims as discussed above. What is

_____

health-care providers. (*See* Doc. No. 116, at 87.)

1   more, plaintiff fails to develop his argument—writing just one sentence in each of his briefs,

2   and offering no analysis.[19]

3   **c.  Claims against Ferris and Godfrey**

4   Plaintiff alleges that Ferris and Godfrey subjected him to a painful ride on the floor of a

5   transport van.  Plaintiff claims he begged these defendants to stop and to place him in a seat,

6   but they did not do so.  Plaintiff also alleges that these defendants subjected him to pain

7   because he had filed grievances against prison staff.  The court has allowed plaintiff to proceed

8   against Ferris and Godfrey on conditions-of-confinement claims under the Eighth Amendment

9   and retaliation claims under the First Amendment.  (*See* Doc. No. 5, at 11-12, 18.)  Plaintiff

10   moves for summary judgment on these claims.  (Doc. No. 125.)

11   The standards that apply to plaintiff's deliberate-indifference claims also govern his

12   conditions-of-confinement claims under the Eighth Amendment.  A plaintiff must show that

13   (1) a defendant caused a deprivation that is "objectively, sufficiently serious," and (2) the

14   defendant was deliberately indifferent to the deprivation.  *Farmer*, 511 U.S. at 834; *accord*

15   *Foster*, 554 F.3d at 812.  As for plaintiff's retaliation claim under the First Amendment, he

16   must show that (1) he engaged in protected conduct; (2) a state actor took some adverse action

17   against him; (3) the protected conduct was a "'substantial' or 'motivating' factor" behind the

18   adverse action; (4) the adverse action would chill a person of ordinary firmness from future

19   exercise of First Amendment rights; and (5) the action did not reasonably advance a legitimate

20   correctional goal.  *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also*

21

22   [19] In his brief in support of summary judgment against Lozovoy, plaintiff wrote, "The court should also find that defendant Lozovoy's actions constitute[] the tort of negligence under the law of the state of California."  (Doc. No. 116, at 16.)  Likewise, against Relevante, plaintiff wrote, "The court should also find that defendant Relevante['] actions constitutes the tort of negligence under the law of the state of California."  (Doc. No. 147, at 25.)  Plaintiff's arguments are perfunctory, and the undersigned finds them unconvincing.  *See Williams v. Rodriguez*, No. 14-cv-2073, 2017 WL 511858, at *9 (E.D. Cal. Feb. 8, 2017) ("Undeveloped arguments that are only argued in passing or made through bare, unsupported assertions are deemed waived.") (citing *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010)); *Lexington Ins. Co. v. Silva Trucking, Inc.*, No. 2:14-cv-15, 2014 WL 1839076, at *3 (E.D. Cal. May 7, 2014) (collecting cases).

1  *Blaisdell v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013) (noting that retaliation claims are

2  not limited to First Amendment speech or freedom-of-association issues).

3      Here, plaintiff has satisfied his initial burden for summary judgment. As for his

4  conditions-of-confinement claim, plaintiff presents his declaration as evidence that he faced a

5  substantial risk of bodily harm or suffered pain. He states that defendants restrained him on the

6  metal floor of the transport van and drove "abusively," which caused him to be tossed around.

7  (Doc. 125, at 46.)[20] He also states that he begged Ferris and Godfrey to stop and to place him

8  in a seat, but they ignored him. (*Id.*) A reasonable jury could find that plaintiff faced a

9  substantial risk of bodily harm or suffered pain. Likewise, plaintiff's declaration serves as

10 evidence of the defendants' deliberate indifference. According to plaintiff, Godfrey said,

11 "Since you like to file complaints on staff[,] find a way to get off the floor on your own." (*Id.*

12 at 45.) Ferris said, "You're in for a bumpy ride." (*Id.* at 46.) These statements could allow a

13 reasonable jury to find that Godfrey and Ferris knew about the risk of bodily harm to plaintiff

14 and that they disregarded that risk. Even though Godfrey did not drive the van, his failure to

15 protect plaintiff from the risk of harm could establish deliberate indifference. *See Lemire*, 726

16 F.3d at 1075; *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

17     Plaintiff also satisfies his initial burden for summary judgment as to his retaliation claim.

18 Again, the same declaration from plaintiff serves as evidence. Filing grievances against staff is

19 a protected activity under the First Amendment. *See Entler v. Gregoire*, 872 F.3d 1031, 1039

20 (9th Cir. 2017). Causing pain or putting someone at risk of bodily harm are adverse actions.

21 Godfrey's and Ferris's statements support the finding that they caused pain or a risk of harm

22 because plaintiff filed grievances against staff. Causing pain or a risk of harm could deter a

23 person of ordinary firmness from exercising First Amendment rights. Exposing an inmate to

24 pain or a risk of harm in response to his grievances serves no legitimate correctional goal.

25 ─────────────

26 [20] The parties dispute whether plaintiff had a medical condition that required a wheelchair during his transfer. Even leaving a healthy man on the metal floor of a vehicle and driving recklessly can cause some serious harm. Plaintiff's physical condition and the extent of his

27 injury may be relevant for damages, but they are not dispositive as to Ferris and Godfrey's liability.

28

Plaintiff has carried his initial burden for summary judgment, and the burden shifts to Ferris and Godfrey to raise a genuine issue of a material fact.

Ferris presents a declaration that raises a genuine issue of a material fact: how Ferris drove the van when he and Godfrey transported plaintiff. Ferris states in his declaration that he stayed on the road, followed the speed limit, and obeyed all traffic laws. (Doc. No. 129-4, ¶ 18.) He states that he "did not drive in a reckless or abusive manner." (*Id.*) These statements, viewed in the light most favorable to defendants, support the inference that Ferris drove in a way that caused no pain or risk of harm to plaintiff. Further, if Ferris drove in a way that did not cause any pain or risk, Godfrey could not be liable for a failure to intervene. How Ferris drove the van is a material fact, and it is genuinely disputed by Ferris, precluding summary judgment.

## IV. Other matters

All defendants have moved for summary judgment on plaintiff's claims against them. (Doc. Nos. 133, 136.) A motion to compel remains pending that could produce additional evidence for plaintiff.[21] The undersigned may also require a round of supplemental briefing on Ferris and Godfrey's motion. Thus, the undersigned will address defendants' motions for summary judgment later in the case.

These findings and recommendations rely on portions of plaintiff's deposition transcript that have not been filed. Defendants are directed to file a copy of the transcript on the docket. The court needs only one copy, so the undersigned will leave it to defendants to decide who will file the transcript.

## V. Findings and recommendations

The undersigned recommends that:

1. Plaintiff's motion for leave to amend (Doc. No. 89) be granted;
2. Plaintiff be allowed to proceed only on these cognizable claims:

---

[21] Plaintiff moved for summary judgment while his motion to compel was pending. He does not explain how motion to compel would produce evidence in support of his motions for summary judgment.

     a.  deliberate-indifference claims under the Eighth Amendment against Lozovoy and Relevante;

     b.  conditions-of-confinement claims under the Eighth Amendment against Ferris and Godfrey; and

     c.  retaliation claims under the First Amendment against Ferris and Godfrey;

3. Plaintiff's motion for summary judgment on his claims against defendant Lozovoy (Doc. No. 116) be denied;

4. Plaintiff's motion for summary judgment on his claims against defendant Relevante (Doc. No. 117) be denied; and

5. Plaintiff's motion for summary judgment on his claims against defendants Ferris and Godfrey (Doc. No. 125) be denied.

The undersigned submits these findings and recommendations to the U.S. district judge presiding over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304. Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The presiding district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). The parties' failure to file objections within the specified time may waive their rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.


Dated:   __August 30, 2018__                _____

                                        UNITED STATES MAGISTRATE JUDGE