UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| TONY ASBERRY, | Case No. 1:16-cv-01741-LJO-JDP |
|---|---|
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT COURT DENY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR RECONSIDERATION |
| v. | |
| C. RELEVANTE, R. LOZOVOY, A. FERRIS, and P. GODFREY, | |
| | OBJECTIONS DUE IN 14 DAYS |
| Defendants. | ECF Nos. 132, 133, 134, 136, 142, 154 |

Plaintiff Tony Asberry, a state prisoner, proceeds without counsel in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff sustained a spinal injury during a physical altercation with another inmate, and plaintiff had received authorization to use a wheelchair before he transferred to Kern Valley State Prison ("KVSP"). Plaintiff alleges that, at KVSP, defendants R. Lozovoy and C. Relevante, medical professionals at KVSP, removed plaintiff's wheelchair authorization in violation of the Eighth Amendment. Plaintiff also alleges that defendants A. Ferris and P. Godfrey, correctional officers, retaliated against plaintiff for filing inmate grievances by tossing him around in the back of a van in violation of the First and Eighth Amendments.

Lozovoy and Relevante move for summary judgment, arguing that plaintiff had no need for a wheelchair and that a mere disagreement between medical opinions cannot amount to deliberate indifference. However, plaintiff's prior authorization to use a wheelchair and his deposition testimony that he could not walk raise a genuine dispute whether plaintiff needed a wheelchair. Additionally, plaintiff's deposition testimony that Lozovoy and Relevante did not

1

examine plaintiff and that they disregarded plaintiff's attempt to explain his prior authorization for a wheelchair raise a genuine dispute of material fact whether Lozovoy and Relevante exercised any medical judgment before deciding to take away the wheelchair. Therefore, we recommend that the court deny summary judgment for Lozovoy and Relevante.

Ferris and Godfrey separately move for summary judgment, arguing that they did not subject plaintiff to a risk of serious harm and that plaintiff has no evidence that they retaliated against him for filing grievances. However, plaintiff's deposition statements that he felt severe pain and that his body was tossed around in the back of the van while being shackled to the van's floor raise a genuine dispute whether plaintiff faced a risk of serious harm. And plaintiff's statements that Godfrey told plaintiff, "Since you like to file complaints on staff, find a way to get off the floor on your own" and that Ferris drove recklessly after saying, "You['re] in for a bumpy ride," raise a genuine dispute whether these defendants subjected plaintiff to unnecessary pain in retaliation for plaintiff's inmate grievances. Therefore, we recommend that the court deny summary judgment for Ferris and Godfrey as well.

Plaintiff moves for reconsideration of the court's earlier decision that denied him leave to amend his complaint and his motions for summary judgment. Since plaintiff raises no substantive argument in support of his motion for reconsideration, we recommend that the court deny his motion.

## I. Summary judgment record

We begin with defendants' evidentiary objections. Defendants raised similar evidentiary issues earlier in the case, and the court should keep the same course in ruling on the objections now. *See* ECF No. 148 at 16-17. Plaintiff has personal knowledge of his bodily condition, and his statements about his bodily conditions, such as pain and his ability to walk, require no specialized knowledge. *See id.* at 16-17; Fed. R. Evid. 701; *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006) (reasoning that plaintiffs' evidence showed their physical impairments, despite defendants' expert witness testimony, when plaintiffs testified about their own health conditions). Although plaintiff's factual propositions lack citations to the record, the court can and should consider materials not cited by the plaintiff—who is pro

se—as the court has already done in denying plaintiff's motions for summary judgment. *See* ECF No. 148 at 17; Fed. R. Civ. P. 56(c)(3); *King v. Cty. of Los Angeles*, 885 F.3d 548, 553 (9th Cir. 2018) ("Because King was pro se, we consider as evidence all factual statements made in motions and pleadings that were based on his personal knowledge, admissible in evidence, and attested to under penalty of perjury."). The court should disregard blanket objections unsupported by analysis. *See* ECF No. 148 at 16; *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013). No party objects to the admissibility of various medical records that appear to be expert medical opinions. *See* ECF No. 148 at 17.

### a. Wheelchair accommodations

Plaintiff, a former inmate at KVSP, proceeds against Lozovoy, a former nurse practitioner at KVSP, and Relevante, a physician assistant at KVSP, for denying him wheelchair accommodations.[1] Plaintiff sustained a spinal injury and had wheelchair accommodations before arriving at KVSP. *See* ECF No. 149 at 18:11-19:3, 20:2-21:16, 21:20-25:21, 28:1-30:17, 32:1-33:8, 35:8-36:14; ECF No. 145 at 2. At KVSP, Lozovoy removed plaintiff's wheelchair accommodations on October 22, 2015. *See* ECF No. 116 at 64. Plaintiff then requested wheelchair accommodations, which prison staff allowed on a few occasions even though plaintiff received no formal physician's authorization for wheelchair accommodations. *See* ECF No. 116 at 75-88. On June 8, 2016, Relevante saw plaintiff sitting in a wheelchair and decided to remove him from his wheelchair. *See* ECF No. 128 at 25.

---

[1] The term "wheelchair accommodations" includes accommodations beyond a wheelchair. The California Department of Corrections and Rehabilitation recognizes at least five levels of mobility impairment. *See* ECF No. 136-8 at 4. For an inmate with the lowest level of mobility impairment, prison officials may authorize the use an "assistive device"; for an inmate with the highest level of mobility impairment, prison officials may authorize the full-time use of a wheelchair and place the inmate in a wheelchair-accessible housing unit. *See id*. Prison officials may also authorize additional accommodations, such as a transport vehicle with a lift, a mobility vest, and housing on the ground floor where the inmate need not climb stairs. *See id.*; ECF No. 136-8 at 6. Plaintiff refers to all these accommodations as wheelchair accommodations, a term we adopt for the purposes of this opinion. *See* ECF No. 141 at 2.

The parties dispute whether plaintiff needed wheelchair accommodations. According to plaintiff, he could not walk. ECF No. 149 at 18:11-19:3. Plaintiff testified during his deposition that in 2010, his cellmate attacked him and injured his back. ECF No. 149 at 20:2-21:16; *see also* ECF No. 133-6 at 6 (treatment note reflecting plaintiff's description of his injury). He testified that, in the wake of this injury, he initially used a wheelchair for only long distances, but that his condition deteriorated and he eventually needed a wheelchair full-time. *See* ECF No. 149 at 21:20-25:21. Plaintiff testified that multiple medical professionals, namely Drs. Wedell, Walker, and Kim, authorized him to use a wheelchair. *See* ECF No. 149 at 28:1-30:17, 32:1-33:8, 35:8-36:14. After his incarceration at KVSP, plaintiff eventually transferred to another prison, High Desert State Prison ("HDSP"), where he saw R. Miranda, a physician assistant, on July 12, 2016. ECF No. 133-6. One of Miranda's treatment notes states that he diagnosed plaintiff with chronic neck and lower back pain with weakness in lower extremities. *Id*. Miranda's treatment note states, "Both legs have *obvious* atrophy equally with 1/5 subjective strength and 1/4 patellar DTR's, no ROM and no sensation both thighs down with soft touch." *Id*. at 6 (emphasis added). Miranda's treatment note also indicates that, in Miranda's view, plaintiff should have a wheelchair and that he could not walk:

> Previous PCP visits PTA show extensive effort to declassify him from DPP, and was D/c'd from DPO status and no justification for a wheelchair. He arrived without a wheelchair, but cannot walk. *Update chrono for a wheelchair* and RFS to PT for further evaluation, after consultation with Dr. Gideon. Will consider admission CTC for better observation in 5 days. Continue MPAP.

*Id*. at 6 (emphasis added).

Plaintiff states in his amended verified complaint that he suffered in several ways without wheelchair accommodations. *See* ECF No. 90 ¶¶ 24, 31-32, 34, 40. For example, he could not attend medical appointments or educational courses. *See id*. ¶ 24. He missed his work assignments and was subject to disciplinary actions as a result. *See id*. ¶ 34. He also had difficulties moving himself within his cell when he used the toilet or ate his meals; to accomplish these daily tasks, plaintiff had to get on the cell floor and use his arms to move. *See id*. ¶ 40.

4

On the other hand, Lozovoy and Relevante contend that plaintiff was faking his symptoms. They rely on other medical professionals who examined plaintiff after Drs. Wedell, Walker, and Kim, but before Miranda. Birdsong, a physician, examined plaintiff and noted that plaintiff "demonstrated poor effort" during the examination. ECF No. 128 at 10, 13. Birdsong also noted, "[plaintiff] seem[ed] to be faking his whole inability to walk. . . . I think he is malingering." ECF No. 136-8 at 10. Another physician, Sao, examined plaintiff and noted that he could not substantiate plaintiff's inability to walk or recommend a wheelchair, walker, or cane for plaintiff. ECF No. 128 at 22-23. Sao states in his declaration that plaintiff's quadriceps and hamstrings appeared "quite muscular" during Sao's examination of plaintiff and that plaintiff could "scoot himself up and down the gurney" despite his claimed inability walk. ECF No. 136-7 at 2.

The parties also dispute what led Lozovoy and Relevante to decide that plaintiff had no need for a wheelchair. According to plaintiff, Lozovoy decided to take away plaintiff's wheelchair without a medical examination. ECF No. 141 at 226. Even though plaintiff tried to explain to Lozovoy that plaintiff had the authorization to use of a wheelchair, Lozovoy said that he "didn't care" and that "he was taking the wheelchair." ECF No. 149 at 44:3-8. In response to a letter asking why Lozovoy removed plaintiff's wheelchair, plaintiff received a memorandum stating that Lozovoy decided to remove the wheelchair because some unidentified individuals had observed plaintiff walking without difficulty. ECF No. 141 at 164. The memorandum also stated that there was "no progress note or an in-person evaluation" supporting Lozovoy's decision to remove plaintiff's wheelchair. *Id*. When plaintiff challenged the removal of his wheelchair through an inmate grievance procedure, he received another memorandum stating that inmates could not "demand actions from staff." ECF No. 141 at 74. In contrast, Lozovoy states in his declaration that two diagnostic tests—an electromyogram and a nerve conduction study—failed to show plaintiff's need for a wheelchair. ECF No. 136-5 at 2; *see also* ECF No. 136-7 at 2-3.

The parties also dispute how Relevante decided to remove plaintiff from a wheelchair.[2] According to plaintiff, Relevante asked plaintiff whether he could move onto a table, and after plaintiff responded that he could not move onto the table, Relevante reported that plaintiff had refused to cooperate with the examination. *See* ECF No. 141 at 232; ECF No. 149 at 67:5-10. Plaintiff testified during his deposition that Relevante's examination lasted only "a couple minutes" and that even though plaintiff told Relevante about being in a wheelchair for years, Relevante decided to take the wheelchair away without an explanation. *See* ECF No. at 67:14-68:19. In response to plaintiff's interrogatories, Relevante stated that he did not recall reviewing plaintiff's medical record or signing a progress note dated June 8, 2016. ECF No. 141 at 204.[3] On the other hand, Relevante states in his declaration that he based his conclusion that plaintiff had no need for a wheelchair on his examination of plaintiff. ECF No. 136-6 at 2.[4]

### b. Transportation

After his encounters with Lozovoy and Relevante, plaintiff moved to HDSP. Defendants Ferris and Godfrey were correctional officers who transported plaintiff by van from KVSP to HDSP. Plaintiff proceeds against Ferris and Godfrey for subjecting him to a substantial risk of bodily harm and pain when they transported him.

---

[2] Even though plaintiff had no formal authorization to use a wheelchair, Relevante saw him sitting in a wheelchair on June 8, 2016. *See* ECF No. 128 at 25. A correctional officer gave plaintiff a wheelchair when prison officials placed him in administrative segregation, and when plaintiff returned to his cell, he kept the wheelchair without authorization. *See* ECF No. 149 at 62:19-64:14.

[3] Plaintiff indicates that Relevante has not supplemented his interrogatory responses even though the discovery period has closed. ECF No. 141 at 202. Some of Relevante's interrogatory responses seem deficient. *See* ECF No. 141 at 203-04 ("INTERROGATORY NO.1: How long have you worked for the CDCR as a medical staff member . . . RESPONSE . . . : At all times relevant to this lawsuit."). These issues raise concern whether Relevante has fulfilled his discovery obligations. If the court adopts these findings and recommendations, the parties should prepare to discuss whether Relevante has violated his discovery obligations. Fed. R. Civ. P. 26(e), 37(c).

[4] No party has submitted a medical opinion that complies with Federal Rule of Evidence 702(b), (c), and (d).

Plaintiff provides the following account of what happened during his transfer to HDSP. On July 6, 2016, Ferris and Godfrey strip-searched plaintiff in his cell while he sat in a wheelchair. ECF No. 90 ¶ 44. When plaintiff took off his clothing, he was asked whether he could stand, and plaintiff said, "I[']m unable to stand[.] I simply collapse." *Id*. Ferris gave plaintiff some underwear, a transportation paper, and a thin jumpsuit. *Id*. Ferris and Godfrey then escorted plaintiff to a transport van. On the way to the van, Godfrey told plaintiff that he could not take the wheelchair to HDSP because it belonged to KVSP and that plaintiff would receive a new one at HDSP. ECF No. 149 at 81:1-12. Once they arrived at the van, Ferris and Godfrey placed a metal ladder against the van, lifted plaintiff off the wheelchair, placed him on the metal ladder, and dragged him up the ladder. *See* ECF No. 149 at 82:20-84:3. Upon entering the van, Godfrey dragged plaintiff on the metal floor to the back of the vehicle and placed handcuffs, waist chains, and shackles on plaintiff. *See id*. at 83:9-84:17; ECF No. 90 ¶¶ 48-50. Godfrey told plaintiff, "Since you like to file complaints on staff, find a way to get off the floor on your own." ECF No. 149 at 84:1-3. Ferris then said, "You[']re in for a bumpy ride" and slammed the van's door. *Id*. at 85:5-20. On the way to HDSP, Ferris drove aggressively over what felt like a rough road. *See id*. 149 at 103:6-109:17; ECF No. 90 ¶ 52. Plaintiff was tossed about on the metal floor of the van and his body "jump[ed]" off the floor of the van, landing back on the floor. ECF No. 149 at 108:20-109:17. When asked during his deposition about his pain, plaintiff rated his pain 9 or 10 out of 10. *Id*. at 120:19-121:11. The van had empty seats, and plaintiff begged Ferris to stop the van and place him in one of the seats. ECF No. 90 ¶ 52. Ferris, however, ignored plaintiff and continued to drive for about two hours, before finally stopping at a gas station. *Id*. There, Godfrey opened the van, lifted plaintiff from the van's floor, placed him in an empty seat and buckled him in, and continued on to HDSP. *Id*.

Ferris and Godfrey dispute plaintiff's account of events. Ferris states in his declaration that plaintiff refused to sit in a seat and that he did not drive abusively:

> Plaintiff was helped into the transportation vehicle, but refused to sit in a seat and refused to be buckled. He insisted on riding on the transportation vehicle floor during the initial portion of the trip. I

7

> did not fail to buckle Plaintiff into a seat because he filed staff complaints. I did not buckle him in a seat because he refused to get into the seat. We exited the KVSP grounds and I began driving to the Interstate 5 on-ramp. The Interstate 5 on-ramp is approximately 45 miles from KVSP traversing several two-lane, paved, country roads, including State Route 43; these roads were fairly worn. The transportation van typically rode "bumpy" because of its age and condition. On the route from KVSP to Interstate 5, I stayed on the road the entire time, followed the speed limit, and with the exception of ensuring that Plaintiff was seat-belted, obeyed all traffic laws. I did not drive in a reckless or "abusive" manner.

ECF No. 129-3 ¶¶ 13-18; *see also* ECF No. 133-9 ¶¶ 15-22. Godfrey recounts similar facts in his declaration, also stating that plaintiff refused to sit in a seat:

> Plaintiff was helped into the transportation vehicle, but refused to sit in a seat and refused to be buckled. He insisted on riding on the transportation vehicle floor during the initial portion of the trip. I did not fail to buckle Plaintiff into a seat because he filed staff complaints. I rode in the passenger seat during the July 6, 2016 transport from KVSP to HDSP. The transportation van typically rode "bumpy" because of its age and condition. When we stopped at the gas station in Kettleman City, I exited the passenger seat van and opened the back doors to check on Plaintiff. I went inside the gas station store and purchased a water for Plaintiff.

ECF No. 129-4 ¶¶ 6-11; *see also* 133-8 ¶¶ 6-12. Ferris and Godfrey also present a declaration from an inmate whose name does not appear in the record but who may have ridden in the van with plaintiff. *See* ECF No. 133-4. The inmate states in the declaration that "[t]here was nothing abnormal or reckless about any transportation ride I received to High Desert State Prison from any CDC institution." *Id*. at 2. As for plaintiff's pain or injury, Ferris and Godfrey rely on the declarations and exhibits from M. Withers, C. Eckelbarger, R. Miranda, medical professionals who have examined plaintiff after his transfer to HDSP, to support their position that plaintiff had no objective or subjective sign of pain or injury. *See* ECF Nos. 133-3, 133-5, 133-6, 133-7. Ferris and Godfrey's summary judgment submissions are silent on whether they told plaintiff, "Since you like to file complaints on staff, find a way to get off the floor on your own" or "You['re] in for a bumpy ride."

**II. Analysis**

A district court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual dispute is genuine if a reasonable trier of fact could find in favor of either party at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The disputed fact is material if it "might affect the outcome of the suit under the governing law." *See Anderson*, 477 U.S. at 248; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Entitlement to summary judgment depends on the movant's burden at trial: a movant who has the burden of persuasion at trial must present evidence supporting every element of a claim or defense; the movant without that burden can prevail by showing that the opponent cannot prove an element of a claim or defense.[5] The court must view the record in the light most favorable to the nonmoving party. *See Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

Familiar standards govern burden-shifting for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-27 (1986). The movant bears the initial burden to show prima facie entitlement to summary judgment. *See id.*; *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016). The burden then shifts to the party opposing summary judgment to produce evidence showing a genuine dispute of a material fact. *See Friedman*, 833 F.3d at 1188. The movant bears the ultimate burden of persuasion. *Id.*

**a. Preliminary matters**

Before moving onto the merits, we address three preliminary matters. First, Relevante and Lozovoy move to extend the deadline for dispositive motions. ECF No. 132. These defendants state in their motion, which they filed a day before the deadline for dispositive motions, that Lozovoy's retirement and a litigation coordinator's vacation have caused difficulties in the preparation of their motion for summary judgment. ECF No. 132-1 at 1-2. Although a district court has the discretion to manage its own the docket by amending its scheduling orders, any exercise of discretion must rely on sound legal principles. *See*

---

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *compare Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (movant with burden of persuasion at trial), *with Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (non-moving party without burden of persuasion at trial).

9

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). A party's retirement and a nonparty's vacation are events that can be anticipated and planned around, and as such they do not justify modification of the scheduling order. We will deny Relevante and Lozovoy's motion for extension of time. Because Relevante and Lozovoy's motion for summary judgment is untimely, the court has no obligation to consider it. *See Arakaki v. Lingle*, 477 F.3d 1048, 1069 (9th Cir. 2007). Even if the court considers the motion, however, Relevante and Lozovoy's motion will fail on the merits, as discussed below.

Second, plaintiff moves for a court order allowing him to access a law library at his prison, stating that he needs to access the law library to respond to Relevante and Lozovoy's motion to amend the scheduling order and their motion for summary judgment. ECF No. 134. We will deny both of these motions from Relevante and Lozovoy. Plaintiff's motion for law-library access thus is moot, and the court should deny it.

Third, Lozovoy and Relevante move for an extension of time to file their reply brief in support of their motion for summary judgment. ECF No. 142. They state that the court should grant an extension to file a reply brief, highlighting their counsel's workload and the length of plaintiff's opposition, which is 242 pages. *See id*. at 2. Lozovoy and Relevante filed their motion for an extension one day after the deadline for their reply brief. Therefore, their motion for an extension of time itself is untimely, and so is denied.[6]

### b. Lozovoy and Relevante's motion for summary judgment

Plaintiff proceeds against Lozovoy and Relevante on deliberate indifference claims under the Eighth Amendment. Lozovoy and Relevante have filed a belated motion for summary judgment. Even if the court considers their motion, genuine disputes of material fact preclude summary judgment.

The Eighth Amendment forbids cruel and unusual punishment. *See* U.S. Const. amend. VIII. Cruel and unusual punishment can take many forms, and the deprivation of basic needs

---

[6] In the analysis below we take into account Lozovoy and Relevante's arguments raised in their reply brief; their motion for summary for summary judgment nonetheless fails on the merits.

such as adequate food, clothing, shelter, medical care, or safety can all violate the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832-37 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). When an inmate challenges prison conditions as cruel and unusual punishment, the deliberate-indifference standard from *Farmer v. Brennan* governs. *See* 511 U.S. at 832-37. That is, a defendant violates the Eighth Amendment's prohibition against cruel and unusual punishment when (1) the defendant causes a deprivation that is "objectively, sufficiently serious," and (2) the defendant is deliberately indifferent to the deprivation. *Farmer*, 511 U.S. at 834; *accord Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

A deprivation is sufficiently serious when the challenged act or omission results "in the denial of the minimal civilized measure of life's necessities." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citation omitted). Courts have found such deprivation in an array of contexts, such as exposing an inmate to substantial risk of bodily harm, inflicting unnecessary pain, or even causing extreme and unnecessary humiliation.[7] A plaintiff, however, may not recover for mental or emotional injury without having suffered physical injury, subject to some exceptions. *See, e.g.*, *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014); *Oliver v. Keller*, 289 F.3d 623, 629 (9th Cir. 2002). Further, the deprivation at issue must be "extreme," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and courts assess the challenged deprivation objectively, not by relying on their own perceptions of decency, *see LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

The second requirement, deliberate indifference, is subjective. The defendant must know the "facts from which the inference could be drawn that a substantial risk of serious harm

---

[7] *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (shackling inmate to hitching post for seven hours under hot sun, giving water only twice, with no bathroom break violates Eighth Amendment); *Spain v. Procunier*, 600 F.2d 189, 197 (9th Cir. 1979) (finding cruel and unusual punishment when prison officials had "no justification at all for requiring the prisoners to bear the visible burdens of neck chains during all visits to family, friends, and counsel"); *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (reasoning that unnecessarily parading inmate in see-through jumpsuit, with his genitals exposed can be cruel and unusual punishment); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 574 (6th Cir. 2013) (shackling pregnant woman during labor when she posed no flight risk violates "contemporary standards of human decency").

exist[ed]" for the plaintiff, and the defendant must actually draw that inference. *Farmer*, 511 U.S. at 837; *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016). The defendant's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *See Farmer*, 511 U.S. at 838.

### i. Serious deprivation

No party disputes that taking away a wheelchair from a man who cannot walk is an objectively serious deprivation. The question here is whether plaintiff could walk. That issue of fact is genuinely disputed, and it precludes summary judgment, since a reasonable jury could find in favor of either side.

A reasonable jury could find in favor of Lozovoy and Relevante. Lozovoy and Relevante state in their declarations that diagnostic tests and a physical examination did not support plaintiff's alleged inability to use his legs. *See* ECF No. 136-5 at 4; ECF No. 136-6 at 2. They also present a declaration of Sao, who states that plaintiff had muscular quadriceps and could use his legs to move himself to some degree, for example from a wheelchair to a gurney. *See* ECF No. 136-7 at 2. These declarations do not conclusively show that plaintiff could walk because a man who cannot walk can still have limited use of his legs. Plaintiff, however, maintains that he could not walk because he could not move his legs at all, so the declarations submitted by Lozovoy and Relevante conflict with plaintiff's portrayal of his condition.

A reasonable jury could also find in favor of plaintiff. Plaintiff testified in his deposition that, after his spinal injury in 2010, his condition deteriorated and he could no longer walk when Lozovoy and Relevante took away his wheelchair. *See* ECF No. 149 at 18:11-19:3, 21:20-25:21. Although plaintiff lacks special knowledge in medicine, he has personal knowledge of his bodily condition, and he can testify regarding his ability to walk. *See* Fed. R. Evid. 701; *Hubbard*, 433 F. Supp. 2d at 1162. Plaintiff also testified that medical professionals at his previous prisons had authorized him to use a wheelchair, which may support his claim that he could not walk. *See* ECF No. 149 at 28:1-30:17, 32:1-33:8, 35:8-36:14. Lozovoy and Relevante may ultimately prevail, but the jury, not the court, should decide whom to believe.

12

Whether plaintiff could walk is genuinely disputed, and the court should not resolve this factual dispute via summary judgment.

### ii. Deliberate indifference

Lozovoy and Relevante acknowledge that plaintiff disagrees with their medical opinions, but contend summary judgment is nonetheless appropriate since "a difference of opinion about the proper course of treatment between a patient and his medical provider" cannot establish deliberate indifference. ECF No. 136-1 at 7. The record, however, could support a finding that Lozovoy and Relevante exercised no medical judgment at all when they decided to take away plaintiff's wheelchair.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012)). Instead, the plaintiff "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Id.* (quoting *Snow*, 681 F.3d at 988). Distinguishing a difference of opinion from a choice of medically unacceptable treatment can pose a challenge, but it remains uncontroversial that a medical professional must exercise some degree of professional judgment; a plaintiff can prevail by showing that a medical professional exercised no medical judgment at all. *See id.* at 1069 (reasoning that summary judgment is inappropriate when defendants "surrendered professional judgment" and denied medical care because of prison policy, not because of medical reasons).

Here, a reasonable jury could find that neither Lozovoy nor Relevante exercised medical judgment when they took away plaintiff's wheelchair. Plaintiff testified that his encounter with Lozovoy was not a medical appointment. *See* ECF No. 149 at 54:19-55:9. During the encounter—according to plaintiff—correctional officers approached him, threw his glasses on the ground, and forcibly removed him from his wheelchair. *Id*. at 43:21-52:8; ECF No. 141 at 226. Plaintiff testified that, even though plaintiff tried to explain to Lozovoy that he had the

13

authorization from a physician to use a wheelchair, Lozovoy told plaintiff that he "didn't care" what any doctor had said and that he "was taking the wheelchair." ECF No. 149 at 44:3-8. Plaintiff states that Lozovoy did not conduct an examination or identify himself as a nurse practitioner. ECF No. 141 at 226. In response to a letter asking why Lozovoy removed plaintiff's wheelchair, plaintiff received a memorandum stating that Lozovoy decided to remove the wheelchair because certain unidentified individuals had observed plaintiff walking without difficulty. *See id.* at 164. The memorandum also stated that there was "no progress note or an in-person evaluation" supporting Lozovoy's decision to remove plaintiff's wheelchair. *Id.* These materials support the inference that Lozovoy exercised no medical judgment when he took away plaintiff's wheelchair.

Plaintiff has evidence that Relevante, too, exercised no medical judgment when he removed plaintiff's wheelchair. Plaintiff testified during his deposition that his encounter with Relevante lasted only "a couple minutes" and that Relevante removed plaintiff's wheelchair without an explanation. ECF No. 149 at 67:14-68:19. According to plaintiff, Relevante asked plaintiff to move onto a table, and after plaintiff responded that he could not do so, Relevante made a record that plaintiff had refused to cooperate with the examination. ECF No. 141 at 232; ECF No. 149 at 67:5-10. In response to plaintiff's interrogatories, Relevante stated that he did not recall reviewing plaintiff's medical record or signing a progress note dated June 8, 2016, the date of his encounter with plaintiff. ECF No. 141 at 204. This evidence could support an inference that Relevante exercised no medical judgment before taking away plaintiff's wheelchair.

In sum, two genuine disputes of material fact preclude a grant of summary judgment in favor of Lozovoy and Relevante: whether plaintiff could walk and whether Lozovoy and Relevante exercised medical judgment in deciding to take away plaintiff's wheelchair. The court should deny Lozovoy and Relevante's motion for summary judgment.

   **c. Godfrey and Ferris's motion for summary judgment**

Plaintiff contends that Ferris and Godfrey subjected him to a painful ride on the floor of a transport van. According to plaintiff, he begged these defendants to stop and to place him in a

14

seat, but instead they caused him to be tossed around in the back of the van, causing him pain. ECF No. 90 ¶ 52. Plaintiff also states that these defendants subjected him to pain because he had filed grievances against prison staff. *Id.* ¶ 50. The court has allowed plaintiff to proceed against Ferris and Godfrey on conditions-of-confinement claims under the Eighth Amendment and retaliation claims under the First Amendment. ECF No. 5 at 11-12, 18; ECF No. 148 at 7-8. Godfrey and Ferris move for summary judgment on those claims.

### i. Conditions-of-confinement claims under the Eighth Amendment

The same standards for deliberate-indifference claims under the Eighth Amendment govern conditions-of-confinement claims under the Eighth Amendment. A plaintiff must show that (1) a defendant caused a deprivation that is "objectively, sufficiently serious," and (2) the defendant was deliberately indifferent to the deprivation. *Farmer*, 511 U.S. at 834; *accord Foster*, 554 F.3d at 812.[8]

Godfrey and Ferris contend that plaintiff cannot establish the first element because he has insufficient evidence to show a substantial risk of serious harm. *See* ECF No. 133 at 12-15. This is so, they argue, because plaintiff has no evidence of dangerous driving such as suddenly slamming on brakes, driving at a high speed, passing other vehicles, or changing lanes. *See id.* at 13-15. Godfrey and Ferris are mistaken. Plaintiff testified during his deposition that he was tossed around in the back of the transport van because of dangerous driving:

> [W]hen we first left that prison, he drove that van like a bat out of— he was driving that van, man, in way, and he was turning—in other words, he was turning off of the dirt, cause I could feel it and you could hear it. You could hear it, all of this going on, and he's driving in such a way to cause me pain back here. . . .
>
> [T]he way that it was throwing me—the way he was throwing me in that van—the way that the—the way he was driving in that van and the way he was tossing me back and forth, essentially, you know what I mean, he was—up and down, and the bumps, and the way I would jump—literally, my body would leave the bottom of the van and come up and go down. (Boom) The grooves—if you ever get a

---

[8] Although Godfrey and Ferris do not raise the issue, the record does not show that Godfrey drove the van. However, even if Godfrey did not drive the van, his failure to protect plaintiff from the risk of harm could establish deliberate indifference. *See Lemire*, 726 F.3d at 1075; *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

15

> chance to look in that van, it's not a smooth surface, but it's metal or iron or steel, or it's one of them, and this it's like dip part and an up part. A dip part and an up part. When you got these waist chains on you like this right here and you go up in the air and you come down, this stuff go in your body, man, and you feel it. And, so, when I was going up in the air and coming down and when I was back and forth like this and turning over, literally, body turning, you know what I mean, like this, I wasn't secured back then.

ECF No. 149 at 108:20-109:17. Plaintiff also testified that he suffered pain during the transfer. *Id*. at 120:19-121:11 ("Q. On a scale of 1 to 10, how would you rate the low back pain as the— as the van ride is occurring? . . . A. It was like a 9, 10."). A reasonable jury could find based on this evidence that plaintiff faced a risk of serious harm.

Godfrey and Ferris next contend that they cannot be liable because plaintiff suffered no physical injury. ECF No. 133 at 15-16. Pain is the quintessential injury in a case of cruel and unusual punishment, *see Farmer*, 511 U.S. at 834, and a reasonable jury could find that plaintiff suffered pain, as discussed above. The court should deny summary judgment for plaintiff's conditions-of-confinement claims against Godfrey and Ferris.

### ii. Retaliation claims under the First Amendment

To prevail on a retaliation claim under the First Amendment, a plaintiff must show that: (1) he engaged in a protected conduct; (2) a state actor took some adverse action against him; (3) the protected conduct was a "substantial" or "motivating" factor behind the adverse action; (4) the adverse action would chill a person of ordinary firmness from future exercise of First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The First Amendment protects an inmate's right to file prison grievances. *See Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017).

Godfrey and Ferris argue, "The only evidence is that [plaintiff] rode on the floor of a CDCR van for approximately forty-five miles while it drove over rural roads. This is not enough to 'chill a person of ordinary firmness' from making staff complaints." ECF No. 133 at 16. Plaintiff's deposition testimony, noted above, supports a reasonable jury's finding that Godfrey and Ferris caused pain, and pain can satisfy the chilling requirement of plaintiff's

retaliation claims. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (reasoning that even threat of harm can chill person of ordinary firmness from future exercise of First Amendment rights and harm that is more than minimal will almost always have chilling effect).

Godfrey and Ferris also argue that their "motivation for allowing Asberry to ride on the van floor was [that] he would not get into one of the seats and Defendants feared that he was trying to manipulate them." ECF No. 133 at 16. Plaintiff testified during his deposition that, before the drive to HDSP, Godfrey said, "Since you like filing staff complaints, find a way to get off the floor on your own" and that Ferris said, "You're in for a bumpy ride." ECF No. 149 at 83:11-84:10. These statements could support an inference that Godfrey and Ferris subjected plaintiff to unnecessary pain in retaliation for plaintiff's inmate grievances. Again, plaintiff's deposition testimony precludes summary judgment.

### iii. Qualified immunity

Finally, Godfrey and Ferris contend that they are entitled to qualified immunity. Qualified immunity shields government officials from monetary damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful." *Felarca*, 891 F.3d at 815. Qualified immunity is often decided "long before trial," *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017), but depending on the circumstances, a genuine dispute of fact can preclude summary judgment on qualified immunity "until after trial on the merits," *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017). Whether Godfrey and Ferris violated plaintiff's constitutional rights is genuinely disputed, as discussed above; the question is whether the law at the time of the challenged conduct "clearly established that the conduct was unlawful."

17

To determine whether the law "clearly established" that the challenged conduct was unlawful, the court must consider whether the defendant "would have had fair notice that the action was unlawful." *Chappell v. Mandeville*, 706 F.3d 1052, 1056-57 (9th Cir. 2013). Qualified immunity does not attach when the law is "sufficiently clear that every reasonable official would have understood" that the conduct in question was unlawful. *See Rodriguez v. Swartz*, 899 F.3d 719, 732 (9th Cir. 2018). Although a binding precedent can help determine what a reasonable official would have known, "it is not necessary . . . that the very action in question has previously been held unlawful." *Id.* at 732 (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017)). Qualified immunity does not attach in an "obvious case," even if the facts are novel. *See Rodriguez v. Swartz*, 899 F.3d 719, 734 (9th Cir. 2018); *accord Hope*, 536 U.S. at 738-39.

Here, Godfrey and Ferris argue that "there was no clearly established precedent that driving a CDCR van over hills, potholes, and railroad tracks with an unseatbelted inmate was a constitutional violation." ECF No. 133 at 18. The absence of such specific precedent, however, is hardly dispositive. A defendant cannot rely on qualified immunity "every time a novel method is used to inflict injury," especially in the Eighth Amendment context. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 796 (9th Cir. 2018) (quoting *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994)). As portrayed by plaintiff, the van, hills, potholes, railroad tracks, and absence of seatbelt are mere means to inflict injury; what matters is whether Ferris and Godfrey knowingly inflicted pain in this unusual way in response to plaintiff's inmate grievances. If plaintiff's version of the facts turns out to be true, any reasonable correctional officer would have known that the conduct here was unlawful; qualified immunity cannot attach.

### d. Plaintiff's motion for reconsideration

Earlier in the case, plaintiff moved for leave to amend his complaint and for summary judgment against defendants. The court granted plaintiff's motion for leave to amend, allowed him to add factual allegations, dismissed newly-asserted incognizable claims, and denied summary judgment. ECF No. 148. Plaintiff now moves for reconsideration. ECF No. 154.

A district court has the inherent authority to reconsider or modify an interlocutory order—including an order on a motion for summary judgment—any time before the entry of judgment. *See Intamin, Ltd. v. Magnetar Techs. Corp*, 623 F. Supp. 2d 1055, 1068 (C.D. Cal. 2009). Ordinarily, a district court reconsiders its summary judgment decision when the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Smith v. Clark Cty. Sch. Dist*., 727 F.3d 950, 955 (9th Cir. 2013) (quoting *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993)). This list is not exhaustive, and "[t]here may also be other, highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J, Multnomah Cty., Or.*, 5 F.3d at 1263 (citation omitted).

The court should deny plaintiff's motion for reconsideration. Plaintiff identifies no "clear error" or intervening change in controlling law. He does not explain how the court's decision is manifestly unjust or argue that unusual circumstances warrant reconsideration. Instead, he states that he has prepared his objections but has not filed them because he does not know whether he can send those objections without the court's permission. ECF No. 154 at 4. Plaintiff also states that he has no counsel and that he does not know how to file a proper motion for reconsideration. *Id*. Plaintiff is free to renew his motion for reconsideration any time before the entry of judgment, and he now knows the applicable standard. Because plaintiff does not raise any substantive argument, the court should deny plaintiff's motion for reconsideration.[9]

### III. Findings and recommendations

For the foregoing reasons, the court should deny:

1. defendants' motions for summary judgment, ECF Nos. 133, 136;

---

[9] Peppered throughout plaintiff's motion for reconsideration are assertions that this magistrate was unfair and biased toward plaintiff. *See, e.g.*, ECF No. 154 at 2. Plaintiff's claims of unfairness and bias are unsubstantiated at best.

2. plaintiff's motion for access to law library, ECF No. 134, and

3. plaintiff's motion for reconsideration, ECF No. 154.

These findings and recommendations are submitted to the U.S. district judge presiding over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304. The parties may object to these findings and recommendations, but they must file and serve written objections within 14 days of the service of these findings and recommendations. The objections must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The presiding district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). The parties' failure to file objections within the specified time may waive their rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

**IV. Order**

Defendants Relevante and Lozovoy's motion to modify the scheduling order and motion for an extension of time are denied. ECF Nos. 132, 142.

IT IS SO ORDERED.

Dated: December 6, 2018

UNITED STATES MAGISTRATE JUDGE